IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TADAREOUS JACKSON,            ) | |
|        ID # 1739419,         ) | |
|            Petitioner,     ) | |
| vs.                          ) | No. 3:15-CV-552-M-BH |
|                          ) | |
| LORIE DAVIS,[1] Director,     ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal     ) | |
| Justice, Correctional Institutions Division,    ) | |
|            Respondent.    ) | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

## I.  BACKGROUND

Tadareous Jackson (Petitioner) challenges his convictions for aggravated robbery. The respondent is Lorie Davis, Director of TDCJ-CID (Respondent).

A.    **State Proceedings**

On June 9, 2009, the State indicted Petitioner for aggravated robbery in Cause Nos. F09-53871-L and F09-53872-L. (Docs. 11-14 at 6, 11-17 at 5.)[1] Counsel was appointed to represent him. (Doc. 11-14 at 8.) Before trial, on July 20, 2010, and October 21, 2010, Petitioner filed *pro se* motions to dismiss counsel and to appoint new counsel. (Docs. 11-14 at 10-11, 59.) Before jury selection began, Petitioner brought the motions to the court's attention. (Doc. 11-7 at 8.) He said

---

[1] Lorie Davis succeeded William Stephens as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Under Rule 25(d) of the Federal Rules of Civil Procedure, she "is automatically substituted as a party."

[1] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

that he wanted counsel to file some unspecified motions, that counsel told him about a plea offer

from the State in return for his cooperation, and that and the prosecutor were friends.  (*Id*. at 8-9.)

Petitioner said:

> I told Mr. Huff several times.  I don't want to proceed with him as my lawyer.  I
> went about it the right way, to my knowledge, by filing motions . . . .  And I just want
> to know have the Court been notified of those motions.  I feel that if I have to stand
> trial with Mr. Huff, I rather stand trial alone by myself.

(*Id*. at 9.)  The court said that Petitioner could hire an attorney, but counsel would remain on the case

until he hired other counsel.  (*Id*. at 9-10.)  Petitioner said that he did not want to stand trial with

counsel, who had not sent him any paperwork regarding his case.  (*Id*. at 10-11.)  The court again

stated that counsel would continue representing Petitioner and that the case would proceed to trial

that day.  (*Id*. at 11.)  Petitioner asked if he could hire an attorney and if the court would appoint

another attorney.  (*Id*. at 11.)  Counsel and the prosecutor stated they were not close friends, they

never tried a case together, and they had not seen each other outside of court.  (*Id*. at 12.)  The court

reiterated its ruling that counsel would continue to represent him.  (*Id*.)  Petitioner asked whether

retained counsel could represent him beginning the next day, if his family hired counsel.  (*Id*. at 14.)

The court stated that he had already had time to retain counsel and that the trial would begin that

day.  (*Id*. at 14-15.)

Petitioner pleaded not guilty and was tried before a jury in Criminal District Court No. 5 of

Dallas County, Texas, on February 22-24, 2011.  (Doc. 11-6 at 1.)  The evidence at trial was

summarized by the state appellate court as follows:

> Erika Reyes and Linda Leach worked at Hillburn Hills apartment complex.  Reyes
> was the business manager and Leach was a leasing agent.  On the morning of March
> 9, 2009, a man, who both identified at trial as appellant, came into the office and
> asked about leasing an apartment.  Leach gave him a brochure, and appellant said he
> would be back later.  About forty-five minutes later, appellant returned and asked for

2

an application. Leach gave him an application and thought he had left. She and Reyes were standing in Leach's office when appellant appeared, pointed a gun at them, and demanded they give him their purses. Leach gave him her purse, but Reyes said her purse was in her office. Appellant told Leach to get on the floor and not move or look at him. He held the gun on Reyes and followed her to her office, tapping her with the gun on the back of her head as they walked. Once Reyes gave him her purse, appellant told her not to come out of the office, and he left. Reyes locked her office door and called the police. Appellant went back through Leach's office and touched Leach on her "private" before running out the door. Leach waited a few minutes and then, like Reyes, called the police. Both Reyes and Leach testified they feared for their life during the encounter.

Cedric Spencer was waiting at a nearby bus stop when he saw a man walking "pretty fast" carrying "junk in his arms." The man stopped by a red car with an old gray hood; Spencer said it looked like a "fix-up job." The man then got into the car and drove off. A few minutes later, the police pulled up and asked if he had seen anybody or anything. Spencer told him what he had just seen. Evidence at trial showed that the mother of appellant's child owned a red car with a gray hood.

On the day of the robbery, maintenance workers at the apartment complex found the four-page application form that Leach said she had "marked up" and gave to appellant. The document was turned over to police. A fingerprint expert testified that a fingerprint on the document belonged to appellant.

Eighteen days after the robbery, Detective Doug Jones separately showed Leach and Reyes photographic arrays; appellant's photograph was included. Reyes testified the officer showed her six pictures one by one, and she tentatively identified photo five, which was appellant's, saying he "looks familiar" but "not sure." Leach narrowed it to two photographs, one of which was appellant, and said, it "looks more like him." At trial, Leach said she had "no doubt" appellant was the person who robbed her.

*Jackson v. State*, Nos. 05-11-01116-CR & 05-11-01117-CR, 2012 WL 4097192, at *1 (Tex. App.

– Dallas Sept. 19, 2012).

Leach only gave out one application form that day. (*Id*. at 70.) She testified that State's

Exhibit No. 3 was the application she gave to Petitioner. (*Id*. at 68-70.) She recognized it based on

markings she made on it when she gave it to Petitioner. (*Id*. at 69-70.) Maintenance workers found

the application on the ground at the apartment complex, but she did not know which worker found

the application. (*Id*. at 68, 80.) She thought it had been found before the police arrived, but she was

not certain.  (*Id*. at 81.)  She did not know if the application was given to the first police officer who arrived.  (*Id*.)  She did not remember whether the police retrieved the application when they came to the apartment complex a second time.  (*Id*. at 86.)

Nicole Mejia, Dallas Police Department crime technician, testified that she went to the apartment complex and picked up a leasing form (State's Exhibit No. 3) from the office.  (*Id*. at 87-88.)  She did not remember who gave her the form.  (*Id*. at 92.)  She did not know who handled the form before she obtained it.  (*Id*.)  She wrote her badge number and element number on the envelope in which the leasing form was placed.  (*Id*. at 88.)  She processed the form for fingerprints and sent it to the crime scene photograph lab for photos of the possible fingerprints.  (*Id*. at 89.)  The photos were sent to Peter Salicco, a Dallas Police Department fingerprint expert, who identified a fingerprint in the photos as Petitioner's.  (*Id*. at 97, 100, 102.)

The court had granted counsel's pretrial motion for the appointment of a fingerprint expert.  (Doc. 11-14 at 56-58.)  However, no expert testified for the defense.  Counsel had also filed a motion for a hearing regarding the eyewitnesses' identification of Petitioner in the photo lineups.  (*Id*. at 22.) Detective Jones had included Petitioner's photograph in the photo lineups because he was a suspect.  (Doc. 11-8 at 23-24.)  The court conducted a pretrial hearing on the matter and overruled counsel's objections to the identification.  (*Id*. at 6, 33.)  At trial, counsel cross-examined Leach and Reyes at length and questioned them about their identification of Petitioner.  (*Id*. at 48-60, 72-84, 85.)

The jury convicted Petitioner, and the trial court sentenced him to 60 years' confinement in each case, to run concurrently.  (Docs. 11-14 at 79, 11-17 at 22.)  The judgments were affirmed on appeal.  *Jackson*, 2012 WL 4097192.  The Texas Court of Criminal Appeals refused petitions for

discretionary review. *Jackson v. State*, PD-1473-12 & PD-1474-12 (Tex. Crim. App. Feb. 6, 2013).

Petitioner's state habeas applications, signed on January 24, 2014, were received by the state court on February 12, 2014. (Docs. 12-15 at 5, 21, 12-18 at 6, 22.) The applications were denied without written order. (Docs. 12-13, 12-16); *see Ex parte Jackson*, WR-81,506-04 & WR-81,506-05 (Tex. Crim. App. Dec. 17, 2014).

**B.    Substantive Claims**

Petitioner's habeas petition, received on February 17, 2015, raises the following grounds:

(1)  He was denied his Sixth Amendment right to self-representation;

(2)  Trial counsel was ineffective for failing to:

      (a)  object to fingerprint evidence based on chain of custody;

      (b)  object to the State's fingerprint expert;

      (c)  investigate fingerprint evidence;

      (d)  obtain a fingerprint expert;

      (e)  file a motion to suppress the apartment application form;

      (f)  object to the photo lineup;

(3)  Counsel's ineffectiveness was cumulative error;

(4)  The evidence was insufficient to support the convictions.

(Doc. 3 at 8, 10, 12-13, 15.) Respondent filed a response on July 10, 2015. (Doc. 15.) Petitioner filed a reply on October 15, 2015. (Doc. 20.)

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for

habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

of art that refers to whether a court's disposition of the case was substantive, as opposed to

procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established

federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite

to that reached by [the Supreme Court] on a question of law or if the state court decides a case

differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*,

529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if

the state court identifies the correct governing legal principle from [the] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v.

Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court

precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new

context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; accord *Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Here, Petitioner asserts that his claims should be reviewed *de novo* because the Court of Criminal Appeals denied his state habeas petitions without written order. (Doc. 23 at 6-9.) The denial of a state habeas petition without written order is an adjudication on the merits of all claims that are not procedurally barred, and the AEDPA standards apply. *Register v. Thaler*, 681 F.3d 623, 626 n.8 (5th Cir. 2012). "Section 2254(d) applies even where there has been a summary denial." *Id.* (quoting *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011)). "[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 98 (2011)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

### III. SUFFICIENCY OF THE EVIDENCE

Petitioner claims that the evidence was insufficient to support the convictions. He contends that the in-court identifications of him by Leach and Reyes were inadmissible, and that it was unclear where the application form was found and by whom. (Doc. 1 at 9; doc. 3 at 28.)

Federal courts conduct an extremely limited review of habeas claims based on the sufficiency of the evidence using the standard in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*, the Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 320. Moreover, the trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id*. Under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "Determining the weight and credibility of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[ ] the weight or credibility given the evidence." *United States v. Ramos–Garcia*, 184 F.3d 463, 465 (5th Cir. 1999).

The state appellate found the evidence was sufficient to support the convictions.

Here, the evidence identifying appellant as the robber is as follows. Eighteen days after the robbery, Reyes and Leach tentatively identified appellant from a photograph lineup and then identified him in court as the man who came into the office asking for an application and then robbed them at gunpoint. Maintenance workers found the application given to appellant on the apartment grounds the same day of the robbery, and a fingerprint expert testified a fingerprint on the application belonged to

8

appellant. A witness at a nearby bus stop near the time of the robbery testified he saw a man leaving the area in red car with an old gray hood that looked like it was being "fixed up." Other evidence showed the description of the car matched a vehicle belonging to the mother of appellant's child. In sum, the jury had identification and fingerprint evidence as well as the description of an unusual looking car associated with appellant in the neighborhood at the time of the robbery.

Appellant challenges the credibility of the complaining witnesses' in-court identifications of him, saying they were unable to identify him from a photographic lineup eighteen days after the robbery but were able to positively identify him in court two years after the offense occurred. Additionally, he attempts to diminish the importance of the fingerprint evidence by asserting that it was unclear exactly where the application was found and who found it. But the credibility of witnesses and the weight to be given their testimony or other evidence were matters for the jury to decide. Viewing the evidence in the light most favorable to the verdict, we conclude the evidence was legally sufficient to prove beyond a reasonable doubt that appellant was the person who robbed Leach and Reyes at gunpoint.

*Jackson*, 2012 WL 4097192 at *2.

Even if the in-court identifications should not have been admitted into evidence, they are considered when reviewing the sufficiency of the evidence. *See United States v. Cugno*, 255 F. App'x 5, 13 (5th Cir. 2007) (citing *United States v. Marshall*, 762 F.2d 419, 423 (5th Cir. 1985); *see also McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (in reviewing the sufficiency of the evidence, "'a reviewing court must consider all of the evidence admitted by the trial court,' regardless whether that evidence was admitted erroneously") (quoting *Lockhart v. Nelson*, 488 U.S. 33, 41 (1988)). Nor, as discussed more fully below, has he has shown that the in-court identifications were inadmissible. Further, regardless of where the application form was found, or by whom, Leach identified it as the form she gave to Petitioner, and his fingerprint was on the form.

Petitioner has not shown that the state court unreasonably determined that the evidence was sufficient to support the conviction.

## IV.  SELF-REPRESENTATION

Petitioner contends that he was denied his right of self-representation.  (Doc. 1 at 6, 7; doc. 3 at 8-15.)

A criminal defendant has the constitutional right to represent himself at trial under the Sixth and Fourteenth Amendments.  *Faretta v. California*, 422 U.S. 806, 818 (1975).  To invoke the right of self-representation, "[t]he defendant must knowingly and intelligently forego his right to counsel, and must clearly and unequivocally request to proceed *pro se*."  *United States v. Long*, 597 F.3d 720, 724 (5th Cir. 2010).  If a defendant makes a clear and unequivocal invocation of the right of self-representation, the right may be waived through subsequent conduct that indicates that the defendant is vacillating on the matter of self-representation or is abandoning the self-representation request. *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982).

Petitioner told the court that if he had to stand trial with current counsel, he would rather stand trial alone by himself.  That statement was made in the context of arguing his *pro se* motions to dismiss counsel and to have other counsel appointed.  He subsequently asked if he could retain counsel to represent him beginning the next day.  The state court could have reasonably concluded that his statement about standing trial alone was an expression of his level of dissatisfaction with counsel while arguing for new appointed counsel, and that it was not a clear and unequivocal invocation of his right of self-representation.  The state court have reasonably determined that he vacillated or abandoned the right by asking for appointed counsel and about retaining counsel. Petitioner has not shown that the state court's rejection of this claim was unreasonable.

## V.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner contends trial counsel was ineffective for failing to object to fingerprint evidence

based on chain of custody; object to the State's fingerprint expert; investigate fingerprint evidence; obtain a fingerprint expert; file a motion to suppress the apartment application form; and object to the photo lineup. He also asserts that counsel's ineffectiveness was cumulative error. (Doc. 1 at 6, 8, 9, 10; doc. 3 at 15-26.)

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, a petitioner must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See Strickland*, 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A petitioner must "affirmatively prove prejudice." *Id.* at 693. The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*,

11

529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel.  *Strickland*, 466 U.S. at 695-96.  One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture.  *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).  Conclusory allegations are insufficient to obtain federal habeas relief.  *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

A.    **Fingerprint Evidence**

1.    ***Chain of Custody***

Petitioner contends that counsel failed to object to the State's failure to show a chain of custody for the apartment application form from which his fingerprint was obtained.  He also claims that counsel failed to file a motion to suppress the form on the basis of chain of custody.  Specifically, he asserts that it was not shown who found the document or where, or who gave the form to Crime Technician Mejia.  Petitioner contends the State was required to show chain of custody under Tex. R. Evid. 901.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Tex. R. Evid. 901(a).  "An item of physical evidence offered at trial must be authenticated under Rule 901.  Rule 901(b) sets out a nonexclusive list of methods for authenticating evidence, including, '(1) Testimony of Witness With Knowledge.  Testimony that a matter is what

12

it is claimed to be. . . . (4) Distinctive Characteristics and the Like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.'" *Gardner v. State*, 306 S.W.3d 274, 293 (Tex. Crim. App. 2009) (quoting Rule 901). If a witness authenticates physical evidence under Rule 901, the State need not show chain of custody. *Id*. at 292 n.35. "Absent evidence of tampering, an objection that the State has failed to establish a proper chain of custody goes to the weight of the evidence rather than to its admissibility." *Campbell v. Cockrell*, No. 3:01-CV-374, 2002 WL 413864 at *5 (N.D. Tex. Mar. 12, 2002) (quoting *Simmons v. State*, 944 S.W.2d 11, 12 (Tex. App.–Tyler 1996)).

Leach testified that the application form (State's Exhibit No. 3) was the one she gave to Petitioner, and that she recognized it from the makings she made on it when she handed it to him. (Doc. 11-8 at 68-70.) Petitioner does not present any evidence of tampering with the form. The form was authenticated under Rule 901, and there was no basis for objecting to the chain of custody. He has not shown there was a basis to suppress the form. Petitioner has not shown that the state court unreasonably rejected these claims of ineffective assistance of counsel. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) (holding that the failure to make meritless objections or motions does not constitute deficient performance).

### 2.      *State's Expert*

Petitioner contends counsel failed to object to the testimony of the State's fingerprint expert, but he does not identify any basis for an objection.   His conclusory claim does not show that the state court's rejection of this claim was unreasonable. *See Miller v. Johnson*, 200 F.3d at 282. To the extent Petitioner argues that the testimony was objectionable on the basis of chain of custody, as discussed, this objection would have lacked merit.

13

### 3.    *Defense Expert/Investigation*

Petitioner contends counsel failed to obtain, consult with, and present a fingerprint expert for the defense, or to investigate the fingerprint evidence.

Claims of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir. 2009). To prevail on an ineffective assistance claim based on counsel's failure to call a witness, a petitioner must name the witness, demonstrate that the witness was available to testify and would have, set out the content of the proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day v. Quarterman*, 566 F.3d at 538.

Petitioner has not identified any expert witness, shown the substance of the testimony of any such expert, or shown that such testimony would have been favorable. *See Day v. Quarterman*, 566 F.3d at 538. He does not identify any other fingerprint evidence that counsel should have discovered through additional investigation. His conclusory claims do not show that the state court's rejection of these claims was unreasonable. *See Miller v. Johnson*, 200 F.3d at 282.

## B.    **Witnesses' Identification of Petitioner**

Petitioner contends counsel failed to object to the identification by Leach and Reyes. He asserts the photo lineup did not comply with Tex. Code Crim. Proc. art. 38.20 because Detective Jones knew that Petitioner was a suspect when he included his photo in the lineup. He also contends his right to due process was violated because it was impermissibly suggestive.

### 1.    *Article 38.20*

Article 38.20 of the Texas Code of Criminal Procedure provides that a photo lineup be

14

conducted by an administrator who can do so in a "blind manner," which means that the administrator cannot know which photo, if any, is of the suspect. *See Guardado v. State*, No. 08-14-00083-CR, 2015 WL 7281704 at *2 (Tex. App.–El Paso Nov. 18, 2015). Article 38.20 was enacted by Act of May 18, 2011, 82nd Leg., R.S., ch. 219, 2011 Tex. Gen. Laws 792. *See Tillman v. State*, 354 S.W.3d 425, 442 (Tex. Crim. App. 2011); *Washington v. State*, No. 01-11-00615-CR, 2013 WL 2299179 at *6 n.6 (Tex. App.–Houston [1st Dist.] May 21, 2013). The effective date of the statute was September 1, 2011. *Tillman*, 354 S.W.3d at 442. The statute applies only to photographic identification procedures conducted on or after September 1, 2012. *Washington*, 2013 WL 2299179 at *6 n.6.

The photo lineups were shown to Leach and Reyes in March 2009, and Article 38.20 had not yet been enacted. Counsel could not have objected to the violation of a non-existent statute. Petitioner has not shown the state court's rejection of this claim was unreasonable.

### 2.    *Due Process*

The Due Process clause protects accused individuals from the use of unreliable identification evidence that resulted from impermissibly suggestive procedures. *United States v. Rogers*, 126 F.3d 655, 658 (5th Cir. 1997) (citing *Manson v. Brathwaite*, 432 U.S. 98 (1977)). The key factor in determining the admissibility of identification testimony is whether, under the totality of the circumstances, the identification was reliable. *Brathwaite*, 432 U.S. at 114. To evaluate whether "an improper pretrial identification was made," the courts look to the standard enunciated in *Simmons v. United States*, 390 U.S. 377 (1968). *See United States v. Burbridge*, 252 F.3d 775, 780 (5th Cir. 2001). In *Simmons*, the Supreme Court held "that convictions based on eyewitness identification at trial following" a challenged pretrial identification "will be set aside on that ground

only if the . . . identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384.

The courts employ "[a] two-step analysis" to determine whether there is a Simmons violation: "first, we determine whether the identification procedure was impermissibly suggestive; if it was, we determine whether, under the totality of the circumstances, the suggestiveness led to a substantial likelihood of irreparable misidentification." *Burbridge*, 252 F.3d at 780.

The photo lineup was not impermissibly suggestive solely because Detective Jones knew that Petitioner's photo was included in the lineup. *See United States v. Starnes*, 552 F. App'x 520, 525 n.1 (6th Cir. 2014) (finding no authority that a photo lineup where the officer knows which photo is the suspects is per se impermissibly suggestive"); *United States v. Smith*, 148 F. App'x 867, 874 (11th Cir. 2005) (a photographic array was not impermissibly suggestive based on the potential for an officer to provide non-verbal clues where the officer knew which photograph was of the suspect and there was no evidence that the officer made any gestures or signals to influence the identification); *Johnson v. LaValley*, No. 11 Civ. 3863, 2014 WL 285089 at *3, 14, 16 (S.D. N.Y. Jan. 24, 2014) (there is no federal requirement that a photo lineup be administered by an officer who was not involved in investigating the case).

Petitioner has not provided any evidence that the manner in which the photo lineup was conducted was impermissibly suggestive. He has not shown that the state courts rejection of this claim was unreasonable.

## C.   Cumulative Error

Petitioner asserts that counsel's alleged deficient performance constituted cumulative error. "[F]ederal habeas corpus relief may only be granted for cumulative errors in the conduct of a state

trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (quoting *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir.1992)).

      Petitioner has failed to demonstrate that counsel rendered ineffective assistance. He has not shown that the state court's rejection of this claim was unreasonable.

## VI. EVIDENTIARY HEARING

      Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary.

## VII. RECOMMENDATION

      The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

      **SO RECOMMENDED** this 15th day of March, 2017.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

18